**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | |
|---|---|
| UNILOC USA, INC. et al § <br>     Plaintiffs, § <br> v. § <br> § <br> UNILOC USA, INC. ET AL V. MEDICAL § <br> INFORMATION TECHNOLOGY, INC. § <br> D/B/A MEDITECH, § <br>     Defendants. § | CIVIL ACTION NO. 6:16-cv-463-RWS <br> *CONSOLIDATED LEAD CASE* <br> **JURY TRIAL DEMANDED** |

**PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION**

Pursuant to the Court's Order. (Dkt. No. 103), Uniloc USA, Inc. and Uniloc Luxembourg, SA ("Uniloc") respectfully file this response in opposition to Defendant OptumInsight, Inc.'s Emergency Motion to Compel Dedesignation (Docket No. 85), which has been joined by the other consolidated Defendants (collectively referred to as "Motion").

i

**Table of Contents**

I. INTRODUCTION ..........................................................**Error! Bookmark not defined.**

II. ARGUMENTS................................................................................................................ 2

    A. Defendants' Alleged Emergency is a Waste of the Court's Resources........................ 2

    B. This District's ExitExchange Case is Highly Analogous in Addressing Relevance and Confidentiality of Infringement Contentions ....................................... 4

    C. The Infringement Allegations Against Other Parties are not Relevant ....................... 5

    D. Uniloc Properly Designated its Contentions as Confidential ..................................... 7

    E. De-designation of Uniloc's Infringement Contentions Would be Harmful to Uniloc's Business ..................................................................................................... 9

    F. Defendants' Alleged Harm is Illusory....................................................................... 11

    G. In re Violation of Rule 28 (d) is Inapplicable............................................................ 11

    H. Optum's Specific Request is Premature ................................................................... 13

III. CONCLUSION............................................................................................................. 13

**Cases**

*CYVA Research Holdings, LLC v. LockLizard Limited*,
 Case No. 2:15-cv-1541 (E.D. Tex Mar. 29, 2016) .............................................................................. 2

*ExitExchange Corp. v. Casale Media Inc., et al.*,
 Case No. 2:10-cv-297 (E.D. Tex.) ............................................................................................ passim

*In re Violation of Rule 28 (d)*,
 635 F.3d 1352 (Fed. Cir. 2011) ........................................................................................... 12, 13

*Jurgens v. McKasy*,
 727 F.2d 1552 (Fed. Cir. 1991) ..................................................................................................... 5

*Scripps Clinic & Research Foundation v. Genentech, Inc.*,
 927 F.2d 1565 (Fed. Cir. 1991) ..................................................................................................... 5

*SRI Intern. v. Matsushita Elec. Corp. of America*,
 775 F.2d 1107 (Fed. Cir. 1985) (en banc) .................................................................................. 5

*Tivo v. Verizon Communications, Inc. et al.*,
 Case No. 2:09-cv-257 (E.D. Tex. Aug. 1, 2011) ......................................................................... 6

TiVo, Inc. v. Echostar Communs. Corp.,
 516 F.3d 1290 (Fed. Cir. 2008). ................................................................................................... 6

*Uniloc USA, Inc. et al v. E-MDs, Inc.*,
 Case No. 6:14-cv-625 (E.D. Tex.) ......................................................................................... 4, 11

*Vita-Mix Corp. v. Basic Holding*, Inc.,
 581 F.3d 1317 (Fed. Cir. 2009) ..................................................................................................... 5

**Rules**

Fed. R. Civ. Pro. 26(c)(1)(G) ........................................................................................... 10, 13

Local Rule 7(h) ............................................................................................................................ 13

## I.  INTRODUCTION

Prior to its meet and confer, Uniloc provided Defendants case law holding (1) infringement contentions as to *other* parties are irrelevant as to invalidity contentions and claim constructions, and (2) infringement contentions can still be considered confidential – even if they are based on publicly available information. Those cases included the *ExitExchange* and *Tivo* cases.

Despite choosing to seek emergency relief, Defendants fail to provide even a single case to rebut *ExitExchange* or *Tivo*. To add further insult to injury, counsel for Defendants are taking the exact opposite positions they took in *ExitExchange*. Counsel for Defendants won the argument in that case for ExitExchange and now hypocritically criticize Uniloc for taking the same positions. In doing so, Defendants fail to provide a single case holding to the contrary or explain why *ExitExchange* is inapplicable. Rather, counsel for Defendants ironically informed Uniloc it wanted this Court to revisit the very case law they established in *ExitExchange.* Yet, Defendants do almost nothing in their motion to explain the facts or holdings of *ExitExhchange.* Likewise, Defendants fail to distinguish *Tivo* and its holding concerning relevance of infringement allegation – despite informing Uniloc it either needed to be revisited or was factually distinguishable.

Uniloc properly designed its infringement contentions as confidential in accordance with the Protective Order.  Defendants' counsel's own words from *ExitExchange* explain well the confidential nature of Uniloc's infringement contentions:

> [Uniloc's] claim charts contain a confidential description of how, in [Uniloc's] view, the elements of Defendants' [accused instrumentality] satisfy the elements of the claims. This description includes a number of elements that, taken separately would not be confidential, such as excerpts from the patent claims, website screen captures, links, and code gathered by [Uniloc] on various websites. That the confidential description is constructed in part from building blocks that are not independently confidential does nothing to erase the fact that the description as a whole is highly confidential. For example, a business's confidential customer list or supplier list may be comprised entirely of the names of companies that are well-known to the general public. This does not make the list non-confidential.

*ExitExchange Corp. v. Casale Media Inc., et al.*, Case No. 2:10-cv-297 (E.D. Tex.), Dkt. No. 229 at *6 (May 31, 2011).[1]

---

[1] For the convenience of the Court, this *ExitExchange* brief is attached as Exhibit A.

1

Defendants have presented no evidence to rebut Uniloc's reasons for keeping the information in its infringement contentions confidential: to protect confidential research, to protect commercially sensitive information, and to prevent harm to Uniloc's business. Defendants also do not dispute that de-designating Uniloc's infringement contentions would undeniably be harmful to Uniloc.

In sharp contrast, there is no harm to Defendants in keeping Uniloc's infringement contentions confidential. Uniloc's claim construction positions are publicly available; and, the Court previously construed the claims of the patents-in-suit. Counsel for Defendants have already prepared invalidity contentions for the patents-in-suit in a prior case. Uniloc has also produced such invalidity contentions. Defendants motion should be denied.

## II.    ARGUMENTS

### A.    Defendants' Alleged Emergency is a Waste of the Court's Resources

The Defendants couching their motion as an "emergency" is an unfortunate waste of this Court's resources. The Eastern District of Texas has warned parties of the cost involved on the Court and its staff. As explained by Judge Gilstrap:

> To allege that a situation is an emergency exacts a cost on the Court and its staff to the detriment of the Court's ability to manage and control its docket. When a party asserts an emergency, the Court must disrupt its schedule and afford immediate attention to that matter. This takes the Court away from other fully briefed and ripe issues.

*CYVA Research Holdings, LLC v. LockLizard Limited*, Case No. 2:15-cv-1541 (E.D. Tex. Mar. 29, 2016). Defendants' alleged issues does not warrant the cost it will exact on the Court and its staff.

First, and quite remarkably, as Defendants acknowledged in the meet and confers, they do not have a single case to support their position despite asking the Court to decide in their favor on an emergency basis. Indeed, counsel for Defendants are taking the exact opposite positions they

2

took in the prior case of *ExitExchange*.[2] Counsel for Defendants won the argument in that case and now criticize Uniloc for taking the same positions. And, Defendants are unable to provide a single case holding to the contrary or explain why *ExitExchange* is inapplicable. Rather, counsel for Defendants ironically want this Court to revisit the very case law they established in *ExitExchange*.

Second, Defendants' sole basis for an emergency is an alleged need of confidential information to prepare invalidity contentions due on January 13, 2017. However, as previously argued by counsel for Defendants, the Federal Circuit has ruled such information (confidential or not) to be irrelevant. More importantly, as Uniloc explained to Defendants in the meet and confer, even assuming Defendants were granted access to such irrelevant information following a normal briefing cycle, Defendants could pursue amended invalidity contentions under a "good cause" standard. Defendants provided no response to this argument and still don't explain why this Court couldn't otherwise handle this in the ordinary course without taxing the Court.

Third, in the meet and confers, the Defendants admitted they were trying to "revisit" or overturn case law from both this District and the Federal Circuit – on an expedited basis. Uniloc clearly laid out the case law supporting its positions prior to the meet and confer. Despite multiple requests from Uniloc, Defendants could not explain why such case law was inapplicable or provide any contrary case law. And, Defendants' emergency motion continues this failure to explain why the settled case law cited by Uniloc should be overturned.

Fourth, despite now alleging the need for this confidential information, some of the very same counsel for Defendants were quite capable of preparing invalidity contentions in the prior case of *Uniloc USA, Inc. et. al. v. e-MDs, Inc.*[3] concerning the same patents in suit – despite lacking access to the confidential information they now say they need. Uniloc has already (1) produced the prior case invalidity contentions to Defendants to aid in their preparation of invalidity contentions and (2) agreed to a two-week extension on the invalidity contentions.

---

[2] *ExitExchange Corp. v. Casale Media Inc., et al.*, Case No. 2:10-cv-297 (E.D. Tex.).
[3] *Uniloc USA, Inc. et al v. E-MDs, Inc.*, Case No. 6:14-cv-625 (E.D. Tex.)

Fifth, Defendants allege they are unable to prepare additional invalidity contentions without Uniloc's positions on claim construction. However, Uniloc's positons on claim construction are already publicly available in the claim construction briefing that has already occurred for the patents-in-suit in *Uniloc USA, Inc. et. al. v. e-MDs, Inc.* And, more importantly, the Court has already construed the claim terms of the patents-in-suit in a *Markman* order. *Id.* at Dkt. 495 (May 31, 2016). Defendants fail to explain why it could not use the Court's construction of claim terms for its invalidity contentions.

Given the above, Defendants should have not characterized their motion as an emergency, unnecessarily taxing the Court and its staff right before the holidays.

**B.  This District's *ExitExchange* Case is Highly Analogous in Addressing Relevance and Confidentiality of Infringement Contentions**

There are two issues in this case: (1) whether infringement contentions as to *other* parties are relevant to invalidity contentions and claim constructions, and (2) whether infringement contentions can be confidential if they are based on publicly available information.

Both issues were addressed in *ExitExchange Corp. v. Casale Media Inc., et al.*, Case No. 2:10-cv-297 (E.D. Tex.). The Defendants in *ExitExchange* sought to (1) de-designate infringement contentions arguing "[the] claim charts merely apply the claims of the patent to internet screen captures, publicly available code, and links to internet web sites," and (2) delay the invalidity contention deadline, arguing a lack of "a proper understanding of claim interpretation used by ExitExchange" thereby being "hampered in preparing its defenses, since claim interpretation for infringement are to be also applied for purposes of claim scope in invalidity analysis." *Id.,* Dkt. No. 229 at *6, *9 (May 31, 2011).

Counsel for Defendants – then representing ExitExchange – argued, among other things, that (1) infringement contentions could still be confidential, even if based on public information, and (2) infringement contentions were not relevant, citing the Federal Circuit *Tivo* case. *Id.* at *6, *10. The Court ruled in favor of ExitExchange and denied the Defendants' relief." *Id.,* Dkt. No.

330 (March 23, 2012).[4] Having won on these issues and now being on the opposite side of the litigation, such defense counsel argues the exact opposite – without providing a single case holding to the contrary or explaining how this case differs from *ExitExchange*.

Uniloc brought the *ExitExchange* case to the attention of the Defendants on November 15, 2016 and has since invited Defendants multiple times to either provide contra-authority or explain why it was inapplicable. Defendants did neither; and, their brief still provides no analysis of the facts, rulings, or arguments in *ExitExchange*.

C.  **The Infringement Allegations Against Other Parties are not Relevant**

The Defendants admit each of them, respectively, has access to their own infringement contentions. However, the Defendants also want access to infringement contentions for other parties. Regardless of their confidentiality designation, the infringement contentions as to other parties is not relevant for Defendants' stated purposes of formulating invalidity and claim construction positions.

First, under well-established claim construction tenets, claims are construed without regards to the accused instrumentality.[5] Yet, this is exactly what Defendants say they need – access to allegations of infringement for all accused instrumentalities (even other parties) so they can prepare claim construction positions and formulate invalidity contentions. Following such well-established law, Defendants' purported need is illusory.

Second, there are two *Tivo* cases providing holdings relevant to this specific issue. As to the first, the Court need look no further than counsel for Defendants' own words in *ExitExchange* concerning the Federal Circuit *Tivo* decision ("Tivo I"):

---

[4] For the convenience of the Court, this *ExitExchange* order is attached as Exhibit B.
[5] *See* e.g., *Jurgens v. McKasy*, 727 F.2d 1552, 1560, 18 U.S.P.Q.2d 1031, 1037 (Fed. Cir. 1991) ("claim is construed without regard to the accused product"); *Scripps Clinic & Research Foundation v. Genentech, Inc*., 927 F.2d 1565, 1580 (Fed. Cir. 1991)("In 'claim construction' the words of the claims are construed independent of the accused product, in light of the specification, the prosecution history, and the prior art."); *Vita-Mix Corp. v. Basic Holding*, Inc., 581 F.3d 1317, 1324, 92 U.S.P.Q.2d 1340 (Fed. Cir. 2009) ("Claims are properly construed without the objective of capturing or excluding the accused device."); and *SRI Intern. v. Matsushita Elec. Corp. of America*, 775 F.2d 1107, 1118(Fed. Cir. 1985) (en banc) (emphasis in original)("A claim is construed in the light of the claim language, the other claims, the prior art, the prosecution history, and the specification, *not* in light of the accused device.")

5

> Defendants argue that their ability to provide invalidity contentions and prepare their defenses is impaired by Plaintiff's confidentiality designation. Defs. at 19 (asserting that since they do not have "a proper understanding of claim interpretation used by ExitExchange, defendants are hampered in preparing its defenses, since claim interpretation for infringement are to be also applied for purposes of claim scope in invalidity analysis."). This argument fails.
>
> Defendants cannot base their invalidity analysis on Plaintiff's infringement read, or Plaintiff's implied claim construction in its infringement analysis. *TiVo, Inc. v. Echostar Communs. Corp.*, 516 F.3d 1290, 1311-12 (Fed. Cir. 2008). In *Tivo*, Defendants wanted their invalidity expert to argue invalidity based on Plaintiff's infringement analysis. *Id.* The district court "refused to allow him to testify about how [Plaintiff's] infringement analysis would affect the issue of invalidity." *Id.* The Federal Circuit affirmed, reasoning that an invalidity analysis must "compare the construed claims to the prior art," not Plaintiff's infringement view. *Id.* Accordingly, Defendants' assertion that they need Plaintiff's infringement analysis to develop their invalidity defense is wrong.

*ExitExchange,* Dkt. No. 229 at *10 (May 31, 2011).

In the second *Tivo* case ("Tivo II"), an Eastern District of Texas case, Judge Craven concluded the relevance of infringement allegations were irrelevant as to another party:

> The *Echostar* case involved only the '389 patent, which is also being asserted against Verizon in this case. Regarding the technical type documents, Verizon wants any expert reports (and any supporting information), any deposition transcripts, and any exhibits pertaining to this information. According to Verizon, the technical documents are relevant because how TiVo mapped the '389 patent to Echostar's products is relevant to "how TiVo may map this patent to Verizon's accused products." Verizon's reply at pg. 2.
>
> The Court agrees with TiVo that the infringement reports and other technical documents related to EchoStar will have little, if any, bearing on how Verizon's accused products function or whether they infringe the '389 patent. *See Zenith Lab., Inc. v. Bristol-Myers Squibb Co.*, 19 F.3d 1418, 1423 (Fed. Cir. 1994) ("[I]t is error for a court to compare in its infringement analysis the accused product or process with the patentee's commercial embodiment or other version of the product or process; the only proper comparison is with the claims of the patent."). The Court does not find the technical type documents relevant and denies this part of Verizon's motion.

*Tivo v. Verizon Communications, Inc. et al.*, Case No. (E.D. Tex. Aug. 1, 2011).[6] Defendants' only attempt to distinguish the Tivo II case is an argument that it involved defendants from different

---

[6] For the convenience of the Court, this Tivo II order is attached as Exhibit C.

cases as opposed to defendants in a consolidated case. Defendants do not explain why such a distinction should modify Tivo II's application. It doesn't. Both this case and Tivo II involve infringement allegations for the same patent as asserted against different defendants.

In the meet and confers, Uniloc inquired whether the Defendants would be willing to share infringement contentions with one another if such contentions contained Defendants' source code. In an about-face retreat, Defendants uniformly stated they would object to sharing infringement contentions if it contained their source code. Such a retreat is telling. Defendants tacitly acknowledge they do not really need this information.

For the above reasons, regardless of the confidentially designation, Uniloc's infringement allegations as to other parties are not relevant. Defendants request for relief in this regard should be denied.

### D.     Uniloc Properly Designated its Contentions as Confidential

Because the case law unequivocally shows infringement contentions are irrelevant for Defendants' stated purpose, Defendants attempt an end-around: de-designate the infringement contentions so they can do with them as they please, including publicizing them on the Internet to the public at large.

The Protective Order entered in this case (Dkt. 70) limits access to confidential information. There should be no exception for Uniloc's infringement contentions, which were properly designed confidential.  To be clear, Uniloc is not arguing that a *per se* rules exist that says all infringement contentions should be confidential. However, when such contentions contain confidential information of a party (here, Uniloc's confidential information), the Protective Order's provisions apply.

Defendants have presented no evidence to rebut Uniloc's reasons for keeping the information in its infringement contentions confidential: to protect confidential research, to protect commercially sensitive information, and to prevent harm to Uniloc's business.[7]

---

[7] Given the irrelevance of such contentions for Defendants' stated purpose, Uniloc can only assume Defendants' true reason is to harm Uniloc's business.

7

Uniloc's infringement contentions were served on November 10, 2016 – four days before the parties submitted a disputed protective order. Dkt. 51 and 57. Contrary to misrepresentations by Defendants, the infringement contentions contain Uniloc's confidential information.[8] In support of its position, Uniloc informed Defendants of the *ExitExchange* case and, also, noted pursuant to the express provisions of the protective order that the infringement contentions contained "confidential research" and "commercially sensitive" information. Dkt. 70 ("Protective Order") at Paragraph 8.

Defendants have never disputed that Uniloc's infringement contentions contain "confidential research" or "commercially sensitive" information. Rather, Defendants' argue the infringement contentions are incapable of being protected because they "are based only on publicly available information." Motion at 2. This is the very same argument addressed and rejected in *ExitExchange*. In particular, taking the opposite position they are now taking, counsel for Defendants argued confidentiality for claim charts could still exist despite being based on publicly available information:

> Defendants assert: "[the] claim charts merely apply the claims of the patent to internet screen captures, publicly available code, and links to internet web sites." Defs. at 6. This argument fails.
>
> The claim charts contain a confidential description of how, in Plaintiff's view, the elements of Defendants' methods satisfy the elements of the claims. This description includes a number of elements that, taken separately would not be confidential, such as excerpts from the patent claims, website screen captures, links, and code gathered by Plaintiff on various websites. *See, e.g. D*efs. Exh. 1 at 4. That the confidential description is constructed in part from building blocks that are not independently confidential does nothing to erase the fact that the description as a whole is highly confidential. For example, a business's confidential customer list or supplier list may be comprised entirely of the names of companies that are well-known to the general public. This does not make the list non-confidential.

*ExitExchange,* Dkt. No. 229 at *6 (May 31, 2011). In agreeing with ExitExchange, Judge Gilstrap cited Judge Ward's prior order in the same case:

---

[8] Motion at 1-2 ("Uniloc's contentions contain no confidential information . . ."); 3 (the contentions contain "no information that is confidential to Uniloc . . .").

> documents such as claim charts may contain information that is confidential technical or business information that is not generally known, that would not normally be revealed to third parties, and for which its disclosure would be detrimental to the party's business. … [a]s Plaintiff points out, the information Plaintiff includes in its claim charts could be used by its competitors to Plantiff's business detriment.

*ExitExchange,* Dkt. No. 330 at *2 (May 31, 2011)(citing Docket No. 223). Uniloc explained to Defendants on November 15, 2016 that Uniloc's infringement contentions fall into the same categories of "information not generally known," "information not normally revealed to third parties," or "information detrimental to the conduct of the designated party's business." More explicitly, Uniloc explained that such information fell within the explicit categories of "confidential research" and "commercially sensitive" information provided for in the protective order. Again, Defendants have never disputed that the infringement contentions fall within such categories.

### E. De-designation of Uniloc's Infringement Contentions Would be Harmful to Uniloc's Business

Several times in its brief, Defendants argued that Uniloc informed them it wanted to take "inconsistent positions."[9] This is false. Uniloc never said such a thing. Rather, Uniloc informed Defendants that their attempt at de-designating the confidential infringement contentions would undeniably be harmful to Uniloc's business. In particular, Uniloc noted that it does not make the strategies it uses in licensing its patents publicly available. Defendants present no evidence or argument that de-designation would not be harmful to Uniloc's business. They know it would harm Uniloc and appear to seek de-designation for the very purpose of harming Uniloc.

No one would seem to fault a company like Ericsson, which actively licenses its patents (albeit in a private setting), from choosing not to provide the analysis it conducted to determine

---

[9] Motion at 4 ("Uniloc's position is flawed and a misuse of the Protective Order in an effort to prevent Defendants from understanding the full scope of the positions that Uniloc has taken in this consolidated case (which Uniloc has admitted during the meet and confer are inconsistent across Defendants) and from effectively coordinating their defense in this case."); 6 ("Uniloc has explained that Defendants should not be permitted to see the inconsistent positions it may be taking as to different Defendants."); and 7 ("Here, Uniloc is making (apparently) inconsistent representations about the scope and nature of its claims, all in the same consolidated case, all in advance of a consolidated Markman and consolidated invalidity contentions.").

how a competitor infringes on its patents. It should be no different for Uniloc. Just because Defendants disagree with Uniloc's licensing business does not somehow make Uniloc's confidential information no longer confidential.

Counsel for Defendant has already explained certain harms a patent holder faces if infringement contentions are de-designated and allowed to be used outside the specific litigation for which they are created. As a first non-limiting example, a patent holder can be subjected to a declaratory judgment action. As a second non-limiting example, a patent holder's patents can be tossed into an *inter-partes* review by third parties. *ExitExchange,* Dkt. No. 229 at *5 (May 31, 2011).

Yet additional harm occurs through the revealing of strategies Uniloc uses in gathering evidence to establish a violation of a patent. In cases involving software, it is inherently difficult to obtain information concerning a party's infringement of a patent. To a certain extent, a patent owner may need to rely on "shadows" until documents are produced *confidentially* confirming the object creating the shadow. In Uniloc's experience, once a party learns of the types of evidence (or shadows) Uniloc accesses, such information starts to magically disappear from the public record. Uniloc also does not want to reveal these confidential strategies to its competitors, which would include any entity attempting to enforce patent rights, particularly in the area of software.

The Federal Rules undeniably allow this Court to protect a party's "confidential research, development, or commercial information" *See, e.g.* Fed. R. Civ. Pro. 26(c)(1)(G) (the Court may issue a protective order to protect a party from revealing "a trade secret or other confidential research, development, or commercial information"). Defendants have not provided any evidence to rebut Uniloc's reasons for keeping its infringement contentions confidential. And, again, Defendants have never disputed that de-designating the infringement contentions solutions would harm Uniloc' business.

## F. Defendants' Alleged Harm is Illusory

Defendants allege they are unable to prepare additional invalidity contentions or prepare claim construction positions without the ability to share infringement contentions with one another. This alleged harm is illusory.

First, Defendants fail to inform the Court that Uniloc's positons on claim construction are already publicly available in the claim construction briefing that has already occurred for the patents-in-suit. *Uniloc USA, Inc. et. al. v. e-MDs, Inc.*[10] And, more importantly, the Court has already construed the claim terms of the patents-in-suit in a *Markman* order. *Id.* at Dkt. 495 (May 31, 2016). Defendants do not to explain why it could not use the Court's construction of claim terms for its invalidity contentions.

Second, despite now alleging the need for this confidential information, some of the very same counsel for Defendants were quite capable of preparing invalidity contentions in the prior case concerning the same patents in suit – despite lacking access to the confidential information they now say they need. Uniloc has already (1) produced those same invalidity contentions to Defendants to aid in their preparation of invalidity contentions in this case, and (2) agreed to a two-week extension on the invalidity contentions.

Third, as held by the Federal Circuit (and argued by counsel for Defendants), the information they seek would be irrelevant.

Fourth, Uniloc has accommodated all requests for its charts to be shared by representatives of a particular party. Uniloc even agreed to allow treatment under a lower level in the protective order ("Confidential" as opposed to "Attorneys' Eyes Only") to allow more representatives of a party to review the contentions.

## G. In re Violation of Rule 28 (d) is Inapplicable.

Defendants argue that infringement contentions cannot be confidential, alleging they only contain legal arguments and citing *In re Violation of Rule 28 (d)*, 635 F.3d 1352, 1360 (Fed. Cir.

---

[10] *Uniloc USA, Inc. et al v. E-MDs, Inc.*, Case No. 6:14-cv-625 (E.D. Tex.)

11

2011). This is incorrect for reasons similar to those counsel for Defendants previously argued to the Court in *ExitExchange*.

First, Uniloc's claim charts fall within expressly recognized categories of confidential information set forth in the Protective Order whereas *Rule 28 (d)* involved information outside the protective order.[11]

Second, *Rule 28(d)* was concerned with whether legal argument, including case citations and case quotes, were confidential. *Id.* ("marking as confidential of legal argument concerning the propriety of a decision by the court is generally inappropriate"). In contrast, the claim charts do not contain any legal arguments, case citations, or case quotes. Instead, the charts explain where, in Uniloc's view, aspects of the claims are found in Defendants' system and methods.

Third, *Rule 28(d)* was concerned about court filings and court proceedings. For example, Rule 28(d) governs briefs filed with the Federal Circuit, *see* Fed. Cir. Rule 28(d)), not disclosures given to opposing counsel during litigation, such as claim charts, *id.* at 1356 (a "presumption of public access" applies to "*judicial* records and documents . . . this common law right of access establishes, as a general matter, that *court files* should be open to the public" (emphasis added) (internal alteration marks omitted)). In addition, there is no reason to think that a presumption of public access should apply to all litigation-related documents. Many documents that are created in the course of litigation have no presumption of public access. For example, there is no presumption that discovery documents, settlement agreements, or expert reports are public.

Fourth, even with respect to court files, "public right of access . . . has been denied where court files might have become a vehicle for improper purposes, for example as sources of business information that might harm a litigant's competitive standing." *Id.* at 1356-57. As explained above, Plaintiff's claim charts may be used by Defendants or third parties for purposes outside of this litigation and to the detriment of ExitExchange. Accordingly, Plaintiff's confidentiality

---

[11] *In re Violation of Rule 28 (d)*, 635 F.3d 1352, 1360 (Fed. Cir. 2011) ("Here, the confidentiality markings in the brief of Defendants-Appellants went well beyond the scope of the protective order").

designation should be upheld. *See id.* at 1360 (Rule 26(c)(1)(G) allows protection of "commercial information that has competitive significance.")

### H. Optum's Specific Request is Premature

Optum's specific request is premature and should not be before this Court. Only the day before the filing this emergency brief, Optum made a specific request to share infringement contentions alleging indemnification obligations with Picis. In the meet and confer, Optum provided a document that Uniloc's counsel had never seen, alleging it supported its position. Uniloc informed Optum it would review and consider this alternative ground of relevancy. Yet, thirty minutes later, Optum filed it emergency brief and pointed to this alternative ground. Optum could not and should not have expected Uniloc to digest a document in real-time. This violates the meet and confer requirements of the local rules.

Pursuant to Local Rule 7(h), the parties are expected to only come forward with open issues necessitating Court intervention:

> Except as otherwise provided by this rule, a request for court intervention is not appropriate until the participants have met and conferred, in good faith, and concluded, in good faith, that the discussions have conclusively ended in an impasse, leaving an open issue for the court to resolve.

Optum cannot honestly assert an impasse had been reached for this issue when it gave no time for counsel for Uniloc to read this new document, consider this document in light of Optum's arguments as to relevance, consult with Uniloc, or respond to Optum.

Uniloc expects it will continue to work with Optum to address this issue in a manner that will not involve Court intervention.

### III. CONCLUSION

For the reasons provided above, Defendants motion should be denied.

Dated: December 19, 2016                    Respectfully submitted,

By: /s/ James L. Etheridge
James L. Etheridge
Texas Bar No. 24059147
Ryan S. Loveless
Texas Bar No. 24036997
Brett A. Mangrum
Texas Bar No. 24065671
Travis L. Richins
 Texas Bar No. 24061296
Etheridge Law Group, PLLC
2600 E. Southlake Blvd., Suite 120 / 324
Southlake, TX  76092
Tel.:  (817) 470-7249
Fax:  (817) 887-5950
Jim@EtheridgeLaw.com
Ryan@EtheridgeLaw.com
Brett@EtheridgeLaw.com
Travis@EtheridgeLaw.com

**ATTORNEYS FOR PLAINTIFFS UNILOC USA, INC. AND UNILOC LUXEMBOURG SA**

## CERTIFICATE OF SERVICE

I hereby certify that all counsel of record, who are deemed to have consented to electronic service are being served this December 19, 2016, with a copy of this document *via* the Court's CM/ECF system per Local Rule CV-5(a)(3) and via email.

/s/ James L. Etheridge
James L. Etheridge